UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALLEN HAMMLER,

    Plaintiff,

v.

DIRECTOR OF CDCR, et al.,

    Defendants.

No. 2:17-cv-1949 MCE DB P

ORDER AND FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims prison officials have failed to provide him with safe living conditions in violation of the Eighth Amendment. Presently before the court is plaintiff's motion to amend the complaint (ECF No. 49), the proposed second amended complaint (ECF No. 50), and plaintiff's motion for preliminary injunction (ECF No. 54). For the reasons set forth below, the court will grant the motion to amend, screen plaintiff's second amended complaint, and recommend that plaintiff's motion for preliminary injunction be denied.

**MOTION TO AMEND**

After defendants were served in this action, plaintiff filed a motion to amend along with a proposed second amended complaint. (ECF Nos. 49, 50.) Defendants were directed to file a response to plaintiff's motion. (ECF No. 51.) Defendants indicated they did not oppose plaintiff's motion to amend and requested the court screen the second amended complaint

1

pursuant to 28 U.S.C. § 1915A. (ECF No. 55.) Accordingly, the court will grant plaintiff's motion to amend and screen the second amended complaint (SAC) below.

**SCREENING**

**I.  Legal Standards**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1) & (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim a complaint must contain more that "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

////

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

## II. Allegations in the Second Amended Complaint

Plaintiff names as defendant in this action Secretary of California Department of Corrections and Rehabilitation (CDCR), Scott Kernan. (ECF No. 50 at 1.) Plaintiff claims he has been deprived of safe living conditions in violation of his Eighth Amendment rights. Plaintiff states he has been housed on a Sensitive Needs Yard (SNY) since 2009 because of his status as a convicted sex offender and former gang member. (Id. at 5-6.) Plaintiff alleges that recently his safety has become endangered due to an increase in the number of gang members housed on SNYs. Plaintiff states he has received rules violation reports (RVRs) when he has refused housing assignments out of fear that potential cellmates would assault him when they found out he was a sex offender. (Id. at 9-10.)

Plaintiff alleges the policy of housing sex offenders, a group he claims has been targeted for physical assault by other inmates, with gang members on SNYs violates his rights. He alleges defendant Kernan was aware of the danger to inmates such as plaintiff because of a report by the Office of the Inspector General published in 2015. (Id. at 14-15.)

Plaintiff has added an additional claim in the SAC. He alleges he entered into an agreement with CDCR when he entered SNY. (Id. at 18.) Plaintiff alleges that the terms of the agreement stated that he would leave "gang politics behind in exchange for SNY placement where he was told he would be provided with predatory free living conditions and an environment devoid of gangs and their politics." (Id. at 6, 18-19.) Plaintiff claims he has kept up his end of the bargain by becoming an SNY prisoner, which carries a stigma in the prison system and by severing his ties to the Bloods street and prison gang. (Id. at 19.) He claims defendants have breached the contract, the SNY agreement, by failing to provide him with safe living conditions.

Plaintiff requests that defendant "implement a program and open an SNY, or Yard upon which to house sex offenders and other vulnerable prisoners apart from SNY gangs and damages for the breach of contract. (ECF No. 21.)

**III. Does Plaintiff State a Claim under § 1983?**

**A. Legal Standards for Eighth Amendment Failure to Protect**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994).

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Farmer, 511 U.S. at 832-33; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of

////

serious harm or injury to an inmate." Labatad, 714 F.3d at 1160 (citing Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)).

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." Farmer, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. Id. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotations marks, emphasis, and citations omitted).

**B. Analysis**

Plaintiff has alleged that defendant Kernan failed to change SNY housing policy even after the Office of the Inspector General issued a report detailing the risk to inmates, such as plaintiff, who are convicted of sex offenses of being targets of physical assault by other SNY inmates. Plaintiff claims the current policy exposes him to a serious risk of harm by other inmates both in his cell and on the yard. "A prisoner can state a section 1983 claim against prison personnel under the eighth amendment by establishing that the prison personnel acted with "deliberate indifference" in creating the condition that violates the eighth amendment." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citing Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986)). Where, as here, a prisoner seeks injunctive relief, "the causal link between the deliberate indifference and the eighth amendment deprivation is broader and more generalized than when that same prisoner seeks damages for the harmful effects of such conditions." Leer, 844 F.2d at 633 ((citing Williams v. Bennet, 689 F.2d 1383 (11th Cir. 1982)).

////

Plaintiff's allegations that defendant was aware of a risk to inmates such as plaintiff and has failed to take reasonable steps to ensure plaintiff's safety are sufficient to state a potentially cognizable Eighth Amendment claim.

### C. Legal Standards for Breach of Contract Claim

Plaintiff's breach of contract claim arises under state law. Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within which such original jurisdiction that they form part of the same case or controversy under Article III." "[O]nce judicial power exists under §1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). Because plaintiff has alleged a potentially cognizable claim under § 1983, the court will exercise supplemental jurisdiction over his state law claim.

"Under California law, to state a claim for breach of contract a plaintiff must plead 'the contract, plaintiff's performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom.'" Low v. LinkedIn Corp., 900 F.Supp.2d 1010, 1028 (N.D. Cal. 2012) (quoting Gautier v. General Tel. Co., 234 Cal.App.2d 302, 305 (1965)).

### D. Analysis

Here, plaintiff has alleged the existence of a contract in the form of the SNY agreement. He claims that he has complied with the terms of the agreement, but defendants have failed to comply with their obligations, thus depriving him of the benefits of the agreement. The court finds these allegations minimally sufficient to state a potentially cognizable claim for the purposes of screening the complaint under § 1915A.

### MOTION FOR PRELIMINARY INJUNCTION

Plaintiff moves for an order from the court preventing prison officials from removing plaintiff from the Secure Housing Unit (SHU) and placing him on a SNY. (ECF No. 54.) The court has previously instructed plaintiff that he has no right to be housed in any particular facility and that his generalized safety concerns are not sufficient to show that he is entitled to injunctive relief. (See ECF Nos. 30, 39, 53.) The court recently recommended that plaintiff's fourth motion

for injunctive relief (ECF No. 52) based on his safety concerns be denied. (See ECF No. 53.)

The only difference between the present motion for injunctive relief and the motion filed June 10, 2019 (ECF No. 52), is that plaintiff states he was informed by prison officials that his SHU term was being suspended and he was placed on a list for transfer to either Kern Valley State Prison (KVSP) or Salinas Valley State Prison (SVSP). (ECF No. 54 at 3.) Plaintiff claims he will be in danger on a SNY at either facility. He alleges SNY gangs are threatening him and awaiting his placement on a SNY where they can get to him. Plaintiff further claims he is being transferred even though he has expressed safety concerns to staff members and has been issued rules violations reports for bad conduct. (Id. at 4.)

### A. Legal Standards

A party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008). The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the public interest, a preliminary injunction may issue so long as serious questions going to the merits of the case are raised and the balance of hardships tips sharply in plaintiff's favor. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

The principle purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision after a trial on the merits. See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2947 (3d ed. 2014). Implicit in this required showing is that the relief awarded is only temporary and there will be a full hearing on the merits of the claims raised in the injunction when the action is brought to trial. Preliminary injunctive relief is

not appropriate until the court finds that the plaintiff's complaint presents cognizable claims. See Zepeda v. United States Immigration Serv., 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claims . . . .").

In cases brought by prisoners involving conditions of confinement, any preliminary injunction must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Further, an injunction against individuals not parties to an action is strongly disfavored. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment . . . resulting from litigation in which he is not designated as a party . . . .").[1]

Further, preliminary injunctive relief is not appropriate until the court finds that the plaintiff's complaint presents cognizable claims. See Zepeda v. United States Immigration Serv., 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; [however] it may not attempt to determine the rights of persons not before the court.").

**B.     Analysis**

The arguments contained in plaintiff's motion are not sufficient to warrant injunctive relief. Plaintiff has stated that unspecified individuals from an unidentified gang have threatened him. His motion does not contain any specific safety concerns indicating that he is facing real, immediate danger that would warrant injunctive relief at this time. Accordingly, the court will recommend that plaintiff's motion for injunctive relief be denied at this time.

---

[1] However, the fact that injunctive relief is sought from one not a party to litigation does not automatically preclude the court from acting. The All Writs Act, 28 U.S.C. § 16519(a) permits the court to issue writs "necessary or appropriate in aid of their jurisdictions and agreeable to the usages and principles of law." The All Writs Act is meant to aid the court in the exercise and preservation of its jurisdiction. Plum Creek Lumber Co. v. Hutton, 608 F.2d 1283, 1289 (9th Cir. 1979). The United States Supreme Court has authorized the use of the All Writs Act in appropriate circumstances against persons or entities not a party to the underlying litigation. United States v. New York Telephone Co., 434 U.S. 159, 174 (1977).

While the court will recommend that plaintiff's motion be denied, it will direct counsel for defendant to inquire about plaintiff's present housing status and what is being done to address plaintiff's safety concerns based on allegations contained in plaintiff's objections to the court's findings and recommendations issued June 13, 2019. (ECF No. 58.) Therein he alleges that on June 11, 2019, CDCR officials attempted to place him on a SNY even though they were aware he would be in immediate danger if he were to be placed on a SNY. Plaintiff claims he has received letters from gang leaders informing him he will be murdered once he is placed on a SNY. (ECF No. 58 at 5.)

Plaintiff further states that after he was informed he was going to be transferred to a KVSP or SVSP SNY on June 11, 2018, he purposely caused himself to be caught with a weapon. (Id. at 6.) He states he knowingly committed a rules violation so that he would receive an additional SHU term in order to avoid placement on a SNY. Plaintiff claims Sergeant Hernandez did not document the weapon so as not to interfere with plaintiff's transfer.

Plaintiff claims Chavez, the inmate housed next to him, gave him several pieces of metal on June 13, 2019. (Id. at 6.) Plaintiff states Chavez is a documented Independent Rider gang member. (Id. at 7.) Chavez informed plaintiff that officers Garcia and Gamboa told Chavez they searched his cell because plaintiff complained his was the only cell searched. Officers found and confiscated a cellphone and speaker from Chavez's cell during their search. Chavez told plaintiff that plaintiff would have to slash Garcia or Gamboa to compensate Chavez for the confiscated property.

Plaintiff claims he showed officer Diaz a loose razor attached to a toothbrush and a sharpened piece of metal with a handle. (Id. at 7.) Plaintiff alleges he showed the weapons to several other officers and prison staff members, but nothing was done. (Id. at 8.) Plaintiff asked a correctional officer to inform Dr. Dusti, the on-call psychologist that plaintiff was suicidal. Plaintiff states he wanted to see Dr. Dusti so that he could show her the weapons. Plaintiff claims Dusti never spoke to him but told the officer she was going to order that plaintiff be taken from his cell and directly admitted to a mental health crisis bed for a 72-hour hold. (Id. at 9.)

////

Plaintiff alleges that early the following morning he was awoken by a group of approximately ten to fifteen officers. (Id. at 10.) He was ordered to give the officers his weapons. Plaintiff slid some of the accumulated weapons under the door, but retained several pieces of metal. He made two more knives and showed them to officers throughout the day. (Id. at 11.) Plaintiff showed weapons to another staff member and slid the weapons under the door to her after she promised to take them to the sergeant. He claims he was not contacted by any staff members about the weapons that day.

Plaintiff claims he made two more weapons on June 15, 2019 because he still had not been contacted about the weapons. (Id. at 14.) Plaintiff showed the weapons to psychologist Lulew, who documented the weapons and informed other staff members. Plaintiff was removed from his cell and interviewed.

In light of the statements contained in plaintiff's objections filed July 2, 2019, the court will order counsel for defendant to contact the litigation coordinator at California State Prison, Corcoran and inform the court about plaintiff's current housing status and what measures are being taken to address plaintiff's safety concerns.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to amend (ECF No. 49) is granted.
2. Plaintiff's second amended complaint (ECF No. 50) states potentially cognizable claims against the defendant.
3. The second amended complaint shall now serve as the operative complaint in this action.
4. Counsel for defendant is instructed to:
   a. Contact the California State Prison, Corcoran Litigation Coordinator to determine what, if anything is presently being done to address plaintiff's safety concerns; and
   b. Within fourteen days after the filing date of this order, file and serve a statement reflecting the findings of such an inquiry, including all appropriate declarations.

////
////

IT IS HEREBY RECOMMENDED that plaintiff's motion for injunctive relief (ECF No. 54) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 11, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:12
DB/prisoner-civil rights/hamm1949.2Am'd+pi